**Rolando CIERVO, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–2033.

Court of Appeals of Alaska.

May 27, 1988.

Steve Cole, Asst. Public Defender, Kodiak, and Dana Fabe, Public Defender, Anchorage, for appellant.

Cynthia M. Hora, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Rolando Ciervo was indicted for attempted murder in the first degree, a class A felony. AS 11.31.100(a); AS 11.41.100(a)(1). As part of a plea agreement, Ciervo pled no contest to an information charging him with assault in the first degree. AS 11.41.200(a)(1). Ciervo, however, later withdrew his plea, and the case went to trial. A jury found Ciervo guilty of attempted murder in the first degree. Superior Court Judge Roy H. Madsen sentenced Ciervo to serve twelve years' imprisonment with five years suspended. Ciervo appeals both his conviction and sentence.

## FACTS

Ciervo, a Filipino, moved to Alaska in 1985, and stayed with Benjamin Doral, the victim in this case. Ciervo had known Doral in the Philippines. By December 1985, however, Ciervo had moved out of Doral's residence, and in January 1986, he moved into the home of Mariano and Alicia Allagonez. While he stayed in the Allagonez home, Ciervo slept on one of the two couches in their living room.

There was a party in the Allagonez home on March 28, 1986, which was attended by Ciervo and Nestor Valdez. Doral was not there. At some point during the party, Ciervo and Valdez got into a fight. It was a brief fight, with only a few punches being exchanged. Shortly thereafter, the party broke up.

Later that evening Ciervo began to complain of having chest pains. Ciervo telephoned Doral several times that evening, requesting Doral's assistance. Finally, Doral and Danny Garcia, a friend of Doral's, went to see Ciervo.

At approximately 11:30 p.m., Doral and Garcia arrived at the Allagonez residence. Doral, Garcia, Ciervo, and Mariano Allagonez sat in the living room. Mariano Allagonez and Garcia sat together on one couch watching television, while Doral and Ciervo sat and talked on the other couch—the couch on which Ciervo typically slept.

Apparently, when Doral got up to leave he grabbed a couch cushion and jokingly hit Ciervo over the head with it. According to Mariano Allagonez, Doral then lifted up another couch cushion, saying, "I know you have a gun." Doral then stood up and said to Ciervo, "I can click [kill] you any time I want to." Ciervo then grabbed his gun from under one of the couch cushions and shot Doral. The bullet went through Doral's throat and exited his shoulder. Though the wound was extremely serious, Doral survived.

## DISCUSSION

■ Ciervo first argues that a newspaper article which was printed during trial prejudiced the jury, and, therefore, the trial court should have granted his motion for a mistrial. On January 13, 1987, the following article appeared in the Kodiak Daily Mirror.

Jury selection began Monday in the first degree assault trial of Rolando Ciervo.

The charges stem from a March incident in which Ciervo allegedly shot Benjamin Doral in the neck with a .38 caliber handgun while he was attempting to leave Ciervo's home. Doral was flown to Anchorage for surgery.

Ciervo originally pleaded no contest to the charge.

When this article appeared, the jury had already been selected and sworn. Defense counsel did not become aware of the newspaper article until January 15, while the jury was deliberating. Defense counsel brought the article to the court's attention. The trial court, however, elected to hear the jury's verdict before addressing the issue. The jury returned a guilty verdict, and the trial court then questioned the ju-

rors individually regarding the newspaper article.

Five of the twelve jurors indicated that they had seen the article. Of those five jurors, two said they stopped reading as soon as they saw Ciervo's name. Two others read the whole article, but could not recall anything about Ciervo's no contest plea, and they added that they did not even know what a no contest plea was. These two jurors further stated that they were not influenced at all by the article.

One juror testified that she read the whole article, recalled the information about Ciervo's no contest plea, and understood what a no contest plea meant. The information about the no contest plea was not presented at trial.[1] It was the only prejudicial information in the article. *See* II *Standards for Criminal Justice,* § 8–3.7 (Approved Draft 1978 & Supp.1982) (to warrant a mistrial, the communication must be prejudicial and refer to information outside the record on which the case is presented). Consequently, only this juror's exposure to that information could possibly justify a mistrial.

The sole juror who had read and understood the prejudicial portion of the article assured the court that it had no impact whatsoever on her decision. She indicated that her decision was based entirely on the evidence presented at trial. Moreover, she and all the other jurors indicated that the no contest plea had not been mentioned at all during their deliberations.

The Alaska Supreme Court has addressed the issue of publicity during trial. The court stated that in such cases, the trial court should determine if there is reason to fear prejudice. If such fear exists, the court must then ask the jury if they have been exposed to the publicity. If the jury has been so exposed, then the court should inquire of each juror individually whether they were able to decide the case fairly. *Brown v. State,* 601 P.2d 221, 232 (Alaska 1979). In this case, the trial court followed the procedure set forth in *Brown* and satisfied itself that the jury was not prejudiced, and that Ciervo received a fair trial. The trial court, of course, was in the best position to make this determination, and its decision is given significant deference. *Brown,* 601 P.2d at 230; *Chase v. State,* 678 P.2d 1347, 1351 (Alaska App. 1984).

In order for a defendant to receive a fair trial, the jurors must all be impartial. *Murphy v. Florida,* 421 U.S. 794, 799, 95 S.Ct. 2031, 2035–36, 44 L.Ed.2d 589 (1975). Each case of juror exposure to publicity, however, must turn on its special facts. *Watson v. State,* 413 P.2d 22, 25 (Alaska 1966) (quoting *Marshall v. United States,* 360 U.S. 310, 312–13, 79 S.Ct. 1171, 1173, 3 L.Ed.2d 1250 (1959)). The ABA Standards for Criminal Justice set forth the following standard for determining when motions for mistrial should be granted:

On motion of the defendant, the verdict of guilty in any criminal case shall be set aside and a new trial granted whenever, on the basis of competent evidence, the court finds a substantial likelihood that the vote of one or more jurors was influenced by exposure to prejudicial matter relating to the defendant or to the case itself that was not part of the trial record on which the case was submitted. Nothing in this recommendation is intended to affect the rules or procedures in any jurisdiction concerning the impeachment of jury verdicts.

II *Standards for Criminal Justice, supra,* § 8–3.7.

Application of this standard to the present case does not warrant a reversal of the trial court's judgment. The trial court was satisfied that none of the jurors were influenced by the prejudicial portion of the article. The one juror who remembered reading and understanding the prejudicial portion of the article assured the court that the article did not influence her decision.[2]

---

1. Ciervo correctly points out that evidence of his withdrawn no contest plea would not have been admissible at trial. Alaska Evidence Rule 410(a)(ii).

2. We recognize that the juror's assurance that she was not influenced by the article is not necessarily controlling. It is possible that the prejudicial material would be of such a nature that even a juror's good-faith effort not to con-

Moreover, any possible prejudice in this case was mitigated by Ciervo's admission at trial that he shot Doral. The defense's theory of the case was that Ciervo shot Doral in self-defense, and his prior no contest plea is not necessarily in direct conflict with that defense. *See, e.g., Chase,* 678 P.2d 1347, 1352 (jurors' awareness of the defendant's admission was not significant, in part, because the defendant admitted the killing at trial). On this record, we find no indication that the jury deciding Ciervo's case was prejudiced by the newspaper article.

■ Ciervo next argues that the trial court erred in refusing to grant his motion for a protective order that would have prohibited the state from presenting evidence of the altercation between Ciervo and Valdez. The altercation occurred approximately five hours before Ciervo shot Doral. Ciervo contends that this was character evidence designed to show that he has a propensity for violence and was therefore inadmissible under Alaska Evidence Rule 404(b). The state claims that the evidence was not designed to show propensity, rather, it was offered to explain why Doral went to see Ciervo, and to explain the context of Ciervo's conversation with Doral. We find no error.

Determination of the admissibility of prior bad acts evidence requires the trial court to perform a two-step analysis. First, the court must decide whether, under Rule 404(b), the evidence is relevant for some other purpose than to show propensity. Second, if the court makes such a finding, it must assess whether, under Rule 403, the nonpropensity relevance outweighs any prejudicial impact the evidence might have. *See Lerchenstein v. State,* 697 P.2d 312, 315–16 (Alaska App.1985), *aff'd,* 726 P.2d 546 (Alaska 1986); *See also Moor v. State,* 709 P.2d 498, 504–05 (Alaska App.1985).

The trial court applied this analysis and found that evidence of the altercation was admissible under Rule 404(b) for purposes

of testimonial completeness. *See Braham v. State,* 571 P.2d 631, 640–41 (Alaska 1977); *Dulier v. State,* 511 P.2d 1058, 1061 (Alaska 1973); *Kugzruk v. State,* 436 P.2d 962, 967 (Alaska 1968). The trial court further concluded that the evidence was admissible under Rule 403 as its probative value was not outweighed by the possibility of any prejudice.

The trial court did not err in admitting evidence of Ciervo's altercation with Valdez. The altercation occurred in relatively close proximity, both in time and in location, to the shooting. Inasmuch as the altercation bore some causal connection to Ciervo's requests that Doral come to see him, it was relevant to show why Doral was visiting Ciervo on that evening. The evidence gave the jury a complete picture of the series of events preceding the shooting. Additionally, any prejudice caused by the evidence was minimal.

■ Ciervo next argues that the trial court erred in denying his motion to dismiss the indictment. Ciervo claims that the indictment was defective because it failed to specifically include language that Ciervo did something which "constituted a substantial step" toward murdering Doral. Ciervo further argues that the trial court erred in allowing the state to amend the indictment. We find these arguments unpersuasive.

An indictment need only contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged," and is not insufficient due to a defect that is merely a matter of form and does not prejudice the defendant. Alaska R.Crim.P. 7(c). The failure to include "substantial step" language in Ciervo's indictment was a defect only as to form. The indictment included a concise description of Ciervo's actions that constituted the offense, including the proper language regarding Ciervo's state of mind.

The Alaska Supreme Court has indicated that "[a]n indictment is insufficient if it

---

sider it would not be sufficient. *See, e.g., Marshall v. United States,* 360 U.S. 310, 312–13, 79 S.Ct. 1171, 1173, 3 L.Ed.2d 1250 (1959); *United States v. Williams,* 568 F.2d 464, 471 (5th Cir.

1978). On the facts of this case, however, we do not find that the newspaper article was sufficiently prejudicial to yield that result.

fails either to inform adequately the defendant of the charges against him or to identify the offense with sufficient particularity so that the resulting judgment may be pleaded as a bar to subsequent prosecutions for the same crime." *Kott v. State,* 678 P.2d 386, 389 n. 4 (Alaska 1984). The caption of Ciervo's indictment made it clear to him that he was charged with attempted murder in the first degree. The murder and attempted murder statutes were cited. The indictment also made clear to Ciervo the essential facts constituting the offense with which he was charged. Moreover, the indictment was specific enough so that once jeopardy attached, Ciervo would be able raise this charge as a bar to future prosecutions for this crime. Ciervo's indictment therefore complied with the requirements of Alaska Criminal Rule 7(c) and *Kott.*

Since, in our view, the original indictment was sufficient, there was no prejudice to Ciervo in allowing the state to amend the indictment to include the word "attempt" in the body of the indictment. *See* Alaska R.Crim.P. 7(e) (indictment may be amended provided it does not prejudice any substantial right of the defendant). Consequently, we find that the trial court did not abuse its discretion by granting the state's motion to amend the indictment. *See State v. Ison,* 744 P.2d 416, 419–20 (Alaska App. 1987).

■ Ciervo next argues that the prosecutor improperly advised the grand jury regarding lesser-included offenses. As part of his presentation to the grand jury, prior to reading the proposed indictment against Ciervo, the prosecutor made the following comments.

In the event that you go through your deliberations and it turns out that for either lack of evidence as to the defendant's conduct or lack of evidence as regards the defendant's mental state, you don't think that you've heard evidence that would support the crime that I have charged, then before you decide on a true bill or a no true bill you should come out and ask me, is there another crime for which this defendant's conduct or for which this defendant's mental state—is there another crime which [may] apply, given these particular set of facts. That's sometimes called lesser-included offenses.

Ciervo argues that the prosecutor's comments were erroneous because he essentially told the grand jury that they could not return a no true bill on the indictment without first considering possible lesser-included offenses. Although this is one possible interpretation of the prosecutor's statement, it is also possible to interpret the statement as merely informing the grand jurors of the possibility of issuing an indictment for a lesser-included offense. It is, of course, proper for the prosecutor to propose an indictment for a lesser offense when the grand jury returns a no true bill on the greater offense. *See Castillo v. State,* 614 P.2d 756, 762–63 & n. 11 (Alaska 1980).

The grand jury was provided with sufficient evidence to issue an indictment for attempted murder in the first degree, and they did so. The grand jury was not in a position where it had to consider lesser-included offenses. Even if the grand jury understood the prosecutor to say that they could not issue a no true bill without asking about lesser-included offenses, which seems to conflict with Alaska Criminal Rule 6(n), Ciervo was not prejudiced because the grand jury issued a true bill. Therefore, the trial court did not abuse its discretion in denying Ciervo's motion to dismiss the indictment.

■ Ciervo's final argument is that his sentence is excessive. Ciervo was convicted of attempted murder in the first degree, a class A felony. AS 11.31.100(a); AS 11.-41.100(a)(1). The maximum sentence he could have received is twenty years. AS 12.55.125(c). As a first felony offender, Ciervo was subject to a seven-year presumptive term. AS 12.55.125(c)(2).

At sentencing, the court found one aggravating factor, that Ciervo's conduct was among the most serious included within the definition of the offense. AS 12.55.-155(c)(10). The court rejected two proposed mitigating factors, that Ciervo's of-

fense was committed under some degree of duress, coercion, threat, or compulsion insufficient to constitute a complete defense, but which significantly affected his conduct, AS 12.55.155(d)(3), and that Doral provoked the crime to a significant degree, AS 12.55.155(d)(7). The court then imposed an aggravated sentence of twelve years' imprisonment with five years suspended. Ciervo asserts that the aggravating factor was not proven by clear and convincing evidence, that the mitigating factors should have been found, and that his sentence is therefore excessive.

In finding that Ciervo's conduct was among the most serious of first-degree attempted murders, the court noted:

> I would find ... that the conduct constituting the offense was among the most serious conduct included in the definition of the offense of attempted murder. It involved the use of a large caliber handgun at very close and confined range. Not only that, but after the first shot was fired, the defendant didn't express any remorse for his actions as you would expect if somebody had shot somebody in the heat of passion and realized after the person fell, what had actually taken place. [You] might expect them to be mortified and do everything they could to try and save the person's life.

The court's comments are supported by the record. After Ciervo shot Doral, Ciervo and Allagonez struggled for control of the gun. More importantly, Doral's injury was very serious and would have been fatal to most people. Ciervo was very close to facing a murder charge. In view of the totality of the circumstances, the trial court was not clearly erroneous in finding that the aggravating factor applied. *Juneby v. State*, 641 P.2d 823, 833–34 (Alaska App. 1982), *modified on rehearing*, 665 P.2d 30 (Alaska App.1983).

■ Ciervo cites no law in support of his claim that his proposed mitigating factor should have been found. He seems to base his argument on Doral's threat, *i.e.,* "I can click you anytime I want to." This threat, however, did not put Ciervo in imminent danger of harm, and is clearly insufficient provocation for a shooting. Nor does the threat signify that Ciervo was acting under any particular compulsion. *See Bynum v. State*, 708 P.2d 1293, 1294 (Alaska App. 1985) (for compulsion to qualify as a mitigator it must be of a sufficiently extraordinary nature that it approaches being a defense to the crime). Doral was unarmed and was at the Allagonez home at Ciervo's request. The trial court's decision to reject the proposed mitigating factors was not clearly erroneous.

■ Ciervo apparently bases his argument that his sentence is excessive on his claim that the trial court should not have found the aggravating factor to apply. Because we find that it was proper to apply the aggravating factor, Ciervo's argument fails. By imposing a sentence of twelve years with five years suspended, the court suspended all the additional time imposed due to the aggravator. The sentence is not clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974). *Cf. Staael v. State*, 697 P.2d 1050, 1057–58 (Alaska App.1985), *aff'd*, 718 P.2d 948 (Alaska 1986) (upholding ten-year presumptive sentence for second felony offender convicted of attempted murder in the first degree).

The judgment of the superior court is AFFIRMED.