NOTICE

*The text of this opinion can be corrected before the opinion is published in the* Pacific Reporter. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

MICHAEL L. RAE,

                    Appellant,

          v.

STATE OF ALASKA,

                    Appellee.

Court of Appeals No. A-11274
Trial Court No. 1JU-11-505 CR

O P I N I O N

No. 2436 — November 21, 2014

Appeal from the Superior Court, First Judicial District, Juneau, Louis J. Menendez, Judge.

Appearances: Jane B. Martinez, Anchorage, for the Appellant. Donald Soderstrom, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Hanley, District Court Judge.[*]

Judge MANNHEIMER.

Michael L. Rae appeals his convictions for first-degree vehicle theft, second-degree burglary, third-degree criminal mischief, and third-degree theft. The

_____

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

State's case was based on allegations that Rae stole a truck, then used it to crash into the side of a store and steal a large amount of beer (six 12-packs, a case of twenty-four, and two 5-gallon kegs).

Rae contends that his indictment was tainted by the introduction of inadmissible evidence at the grand jury. He also contends that the State failed to produce sufficient evidence at his trial to establish that he was the perpetrator of these crimes.

For the reasons explained in this opinion, we conclude that neither of Rae's claims has merit, and we therefore affirm his convictions.

### *Underlying facts*

When a defendant challenges the sufficiency of the evidence to support a criminal conviction, we must view the evidence (and all reasonable inferences to be drawn from it) in the light most favorable to the jury's decision. [1] We therefore present the evidence in Rae's case in that light.

In the early morning hours of April 29, 2011, a break-in and theft occurred at the gift shop of the Alaskan Brewing Company in Juneau.

Thomas West, a company employee, arrived at work shortly before 4:00 a.m.. When he arrived, West noticed a truck parked nearby with the name of a local market, "Breeze-In", stenciled on its side. After a short while, West saw this truck drive past him slowly. West found this unusual because he did not normally see the Breeze-In truck in that location, nor being driven at that time of day.

A little later, West discovered the bumper of a vehicle on the sidewalk in front of the Alaskan Brewing Company gift shop, and he saw that the gift shop doorway

---

[1] *See Iyapana v. State*, 284 P.3d 841, 848-49 (Alaska App. 2012); *Silvera v. State*, 244 P.3d 1138, 1143-44 (Alaska App. 2010).

had been smashed in. Six 12-packs of beer, one full case of beer, and two 5-gallon kegs of beer were missing from the gift shop.

About 30 minutes later (at 4:35 a.m.), a resident of a local mobile home park, John McGillis, saw the Breeze-In truck pull up in front of trailer number 46. Rae was driving the truck. (McGillis knew Rae because they had lived together for two weeks.) McGillis watched as, over the next ten minutes, Rae unloaded kegs and packs of beer from the truck.

After unloading the beer, Rae got back into the Breeze-In truck and sped away. About fifteen minutes later, McGillis saw Rae return to the mobile home park on foot.

Later that morning, the Juneau police found the Breeze-In truck. It was damaged, and its front bumper was missing.

Detective Krag Campbell took up the investigation of this occurrence. Campbell spoke with McGillis, and he viewed a surveillance video that corroborated parts of McGillis's account. Detective Campbell then went to trailer 46. He found Rae sitting on the front porch; Rae was drinking a bottle of the Alaskan Brewing Company's IPA. Campbell immediately detained Rae.

*The sufficiency of this evidence to support the jury's finding that Rae was the perpetrator of these crimes*

At Rae's trial, he conceded that *someone* had stolen the truck, crashed into the brewing company's gift shop, and stolen the beer — but Rae contended that the State's evidence was not sufficient to prove that he was this person. The jury rejected Rae's defense and concluded that Rae was the perpetrator of these crimes. Now, on appeal, Rae argues that the evidence presented at his trial was legally insufficient to support the jury's conclusion.

Evidence is legally sufficient to support a criminal conviction if the evidence and the reasonable inferences to be drawn from it, when viewed in the light most favorable to the jury's decision, are sufficient to convince fair-minded jurors that the government has proved its allegations beyond a reasonable doubt. [2]

The evidence recounted in the preceding section of this opinion meets this test. We therefore conclude that the evidence presented at Rae's trial is legally sufficient to support his convictions.

*Rae's challenge to the grand jury indictment*

When Rae's case was presented to the grand jury, the State presented the evidence that we have already described.

But in addition, the State presented evidence of what Detective Campbell discovered afterwards inside trailer number 46, when he searched that trailer under the authority of a search warrant. Inside the trailer, Detective Campbell found thirty to forty bottles of the Alaskan Brewing Company's "Alaskan Amber" beer scattered around the living room, plus packs of beer and two 5-gallon beer kegs.

At some point after the prosecutor finished her presentation of this evidence, one of the grand jurors asked, "Is there any way — Do we know for sure that the kegs that were found in that trailer were the actual kegs that were stolen?" In response, the prosecutor recalled one of the Alaskan Brewing Company employees to the stand. This employee testified that each keg had a unique UPC code, and that the codes on the recovered kegs matched the codes of the gift shop's missing kegs.

The grand jury then returned a true bill on all counts.

---

[2]  *State v. McDonald*, 872 P.2d 627, 653 (Alaska App. 1994).

Five months later, the court and the parties discovered that the search warrant application hearing had not been recorded. Rae's attorney moved to suppress the search warrant and all the resulting evidence, and to dismiss the indictment (because this evidence had been presented to the grand jury).

The superior court held an evidentiary hearing to see if the record of the search warrant application could be reconstructed. Both Detective Campbell and the judge who heard the search warrant application testified at this hearing, but the superior court ultimately determined that it was not possible to reconstruct a reliable record of the search warrant application hearing. The court therefore granted Rae's motion to suppress the evidence obtained pursuant to the search warrant. (This evidence was not presented at Rae's trial.)

But even though the superior court suppressed the evidence obtained under the search warrant, the court denied Rae's motion to dismiss the indictment. The court concluded (1) that the remaining grand jury evidence was sufficient to support the indictment, and (2) that the presentation of the search warrant evidence had not appreciably affected that grand jury's decision.

On appeal, Rae challenges both of the superior court's conclusions.

With respect to Rae's first contention (that the remaining grand jury evidence was insufficient to support the indictment), we need only reiterate our earlier conclusion that this same evidence was sufficient to support the *trial jury's* decision that Rae was guilty beyond a reasonable doubt. Because this evidence was sufficient to support a finding of guilt beyond a reasonable doubt, this evidence was sufficient to support the grand jury's indictment, where the burden of proof is less demanding. [3]

---

[3] *See Cathey v. State*, 60 P.3d 192, 195-96 (Alaska App. 2002); *Sheldon v. State*, 796 P.2d 831, 836-37 (Alaska App. 1990) (a grand jury should return an indictment when the grand jury is "convinced of the probability of the defendant's guilt").

We therefore turn to Rae's remaining contention: that the evidence obtained during the execution of the search warrant caused the grand jury to return an indictment when, otherwise, they would not have.

The applicable legal test is stated in *Stern v. State*, 827 P.2d 442 (Alaska App. 1992). Under *Stern*, we must ask whether "the probative force of [the] admissible evidence was so weak and the unfair prejudice engendered by the improper evidence was so strong that it appears likely that the improper evidence was the decisive factor in the grand jury's decision to indict." *Id.* at 446.

Again, the answer to our inquiry seems to lie in our conclusion that the evidence presented at trial — essentially the same evidence that the grand jury heard, minus the evidence obtained during the search — was sufficient to support the guilty verdicts returned by the trial jury. This demonstrates that the probative force of the remaining evidence was *not* weak — that it was, in fact, convincing beyond a reasonable doubt — and that the search warrant evidence therefore could not have been the decisive factor in the grand jury's decision to indict Rae.

The only aspect of this case that might indicate a contrary conclusion is the fact that one of the grand jurors, even after hearing the search warrant evidence, still wanted to know if the government had more definite proof that the two kegs found in Rae's trailer were the same kegs stolen from the brewing company's gift shop. This grand juror's motive for asking this question is unclear: the question might simply reflect the fact that the grand juror was curious about this point, but the grand juror's question might also indicate that the grand juror had lingering doubts about the State's evidence.

But even if we assume that this grand juror did indeed have doubts about the State's case, we conclude that this does not require dismissal of the indictment.

A grand jury decides cases by majority vote; that is, the grand jurors' decision need not be unanimous. Thus, even if we assume that this single grand juror harbored reservations about the case, this does not tell us whether any other grand jurors had doubts about the case, nor does it tell us whether the grand jury as a whole would have been unlikely to return an indictment in the absence of the search warrant evidence.

Alaska Evidence Rule 606(b) prohibits any inquiry into the deliberative processes of individual grand jurors for the purpose of attacking an indictment. [4] Thus, under Alaska law, we (and the superior court) are forbidden from inquiring into the subjective deliberative processes of the other grand jurors on Rae's panel. Instead, we are required to apply an *objective* standard when we decide, under the *Stern* test, whether the introduction of the search warrant evidence appreciably affected the other grand jurors' decision.

Alaska law is already clear on this point in the context of attacks on the validity of a trial jury's verdict. In *Swain v. State*, 817 P.2d 927 (Alaska App. 1991), this Court held that when a question arises post-verdict as to whether an impropriety affected the decision of a trial jury, that question is resolved under the "substantial likelihood test", which this Court declared to be "an objective standard". *Id*. at 932. [5]

---

[4] Evidence Rule 606(b) states, in pertinent part: "Upon an inquiry into the validity of a verdict or indictment, a juror may not be questioned as to ... the effect of any matter or statement upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes."

[5] Quoting the American Bar Association's commentary to its Criminal Justice Standard 8–3.7.

This rule also applies to the attack on the indictment in Rae's case. We apply an objective test when we assess whether the search warrant evidence was the decisive factor in the *other* grand jurors' decision to indict Rae. *Stern*, 827 P.2d at 446.

Using this objective test, and given the other evidence presented to the grand jury, we conclude that the evidence obtained under the search warrant was not the decisive factor in the other grand jurors' decision to indict Rae. The superior court therefore properly denied Rae's motion to dismiss the indictment.

*Conclusion*

The judgement of the superior court is AFFIRMED.