George C. VINCENT, Appellant,

v.

Ben Crave GOODMAN, Appellee.

No. 5157.

Court of Civil Appeals of Texas, Eastland.

June 29, 1978.

Patrick D. Barber, Colorado City, for appellant.

Dan Cotton, Snyder, for appellee.

McCLOUD, Chief Justice.

Plaintiff, Ben Crave Goodman, sued George C. Vincent on an oral contract seeking payment for the drilling and completing of a water well. Vincent answered that Goodman failed to fulfill a guarantee by plaintiff that the water well when completed would be sufficient to pump a full flow through a one-inch column pipe using a ¾ horsepower submersible pump. Plaintiff denied he made any such guarantee. The well, after completion, pumped only a few minutes before going dry. Defendant contended in the trial court the guarantee was a material part of the oral contract. His evidence showed that the well was drilled in an area known to contain abundant water, and the "dry hole" probably resulted from improper completion by plaintiff. In answer to a single special issue, the jury in a 10–2 verdict determined that plaintiff did not guarantee the well as contended by defendant, but that the agreement between the parties required plaintiff to only drill, equip and complete the well. Judgment was entered for plaintiff. Defendant filed a motion for new trial alleging jury misconduct. Following a hearing, the court overruled defendant's motion. Defendant has appealed. We reverse and remand.

The trial court failed to file express findings of fact and conclusions of law as requested by defendant, but did state in its order overruling defendant's motion for new trial, "that there was some discussion among the jurors of their own personal experiences concerning the drilling of water wells, but that upon each such occasion they were warned by a juror that they could not consider their personal experiences, and such discussion did not influence the jury verdict."

One complaining of jury misconduct has the burden to prove not only the overt act of misconduct, but also that it was material misconduct, and from the record as a whole that injury probably resulted. Rule 327, Texas Rules Civil Procedure; *Fountain v. Ferguson,* 441 S.W.2d 506 (Tex. 1969). Whether misconduct occurred is a question of fact and whether injury probably resulted is a question of law. *City of Houston v. Quinones,* 142 Tex. 282, 177 S.W.2d 259 (1944); Pope, Jury Misconduct and Harm, 12 Baylor L.Rev. 355 (1960).

The evidence conclusively establishes that members of the jury discussed their own personal experiences concerning the drilling of water wells.

Defendant called as witnesses jurors Chastain and Early. Chastain testified that several jurors stated they had had previous water well experience and they had never been guaranteed a good water well. He testified further that a lady juror said that she had had personal experience with dry holes and she had to pay for several dry holes before any water was found on her

place and that Mr. Vincent should have to pay for his well. He stated that the voting by the jury started out at 7 "yes" and 5 "no" and progressed to 10–2. He testified that the statements by the jurors about their own personal experiences with dry holes, and the statements by the lady that she had had to pay for several dry holes and Mr. Vincent should pay for his, were made after the 7 to 5 vote and before the 10 to 2. He testified the statements were made in that time period when some of the votes were changed. Chastain's testimony regarding the contents of the statements made was not refuted.

Early stated that several of the jurors had had water wells drilled and they said they always had to pay for the dry holes. He remembered the lady juror stating that she paid for three dry holes before she found any water on her place and that Mr. Vincent should have to pay for his well. He said he thought, but was not sure, these statements were made before any vote had been taken. He stated they were made at the beginning of the discussion. Early testified, "Most—lots of the jurors said that there couldn't be a guarantee. It was the general consensus in there that the well shouldn't have been guaranteed." He stated, "They just said that nobody in his right mind would guarantee a water well." He added, "A few people said, you know, that anytime you have a well drilled—you have to pay whether it's wet or dry. It doesn't matter." Early further testified that the statement was made that it would be impossible for a water well to be guaranteed. Early's testimony concerning the contents of the statements made was not refuted.

Plaintiff called as witnesses jurors Bell, Maddux, and Rhodes. Bell, who had apparently been in the courtroom and heard the testimony of Chastain and Early, was asked if he recalled any jurors discussing their personal experiences in having water wells drilled on their respective lands. He replied, "Yes, sir. It's mostly what's already been brought up. I discussed my own personal well drilling some and I believe Mrs. Bill Eiland discussed hers some." The transcript reflects that no person named "Ei-land" served on the jury. Bell stated, "I think I made the statement, if I remember correctly, that we just were supposed to judge this situation or this case on the evidence presented in court. I believe most of them heard me say that." When asked on cross-examination to tell what personal experiences he discussed in the juryroom, Bell answered, "Well, I discussed two or three wells I had dug and no one ever guaranteed water in those. And in my particular territory I wouldn't ask a man to guarantee it."

Juror Maddux answered, when asked if he remembered statements made by several jurors concerning their personal experiences in having water wells drilled on their own land, "I recall several. Mr. Bell told us about what I just heard . . . And I suppose everyone of the rest of them sitting there heard the same thing." Maddux said he heard Bell state that the jury was supposed to go by the evidence and nothing outside of the evidence.

Juror Rhodes testified that she made no statements concerning her personal experiences in having water wells drilled. She stated she did not recall Bell saying they were supposed to decide the case only on the evidence. She stated she "remembered more about" one of the ladies who "was talking about the water wells."

There is evidence that juror Bell made the statement that the jury should decide the matter only on the evidence. Juror Rhodes did not recall the admonition. Defendant contends, and we agree, there is no evidence to support the trial court's statement in the order overruling defendant's motion for new trial, that upon "each" occasion when the statements were made by jurors concerning their personal experiences in drilling water wells, "they were warned by a juror that they could not consider their personal experiences."

■ The issue in the instant case was narrow. Did plaintiff guarantee the well? The record conclusively establishes that "several" jurors discussed their personal experiences in having water wells drilled.

Statements were made by jurors that they had never been guaranteed a good water well. Statements were made that when you had a well drilled, you had to pay whether it was wet or dry. Jurors Chastain and Early each testified, and it was not refuted, that a lady juror stated that she had paid for several dry holes and defendant should pay for his. There is evidence that following the misconduct, the vote of the jury changed in favor of plaintiff. It is apparent from the testimony that the improper statements were not casual or vague general remarks. The testimony shows that several jurors participated in the misconduct. The improper statements were specific and went to the very heart of the controversy. The "rebuke" evidence is inconclusive as to its timeliness, and as to whether the rebuke terminated the improper discussion.

We hold that defendant has established material misconduct which was probably injurious. Judgment of the trial court is reversed and the cause is remanded.