Lester J. FICKES and Dorothy M. Fickes, Appellants,

v.

PETROLANE–ALASKA GAS SERVICE, INC., Appellee.

PETROLANE–ALASKA GAS SERVICE, INC., Cross-Appellant,

v.

Lester J. FICKES and Dorothy M. Fickes, Cross-Appellees.

Nos. 4035, 4077.

Supreme Court of Alaska.

May 29, 1981.

---

John F. Rosie, Whiting & Rosie, Fairbanks, for appellants and cross-appellees.

Clay A. Young, Delaney, Wiles, Moore, Hayes & Reitman, Inc., Anchorage, for appellee and cross-appellant.

Before RABINOWITZ, C. J., CONNOR, BURKE, and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

CONNOR, Justice.

On December 16, 1975, an explosion occurred in the water treatment plant at a trailer court owned by appellants. Appellants brought a civil action against appellees, claiming that the explosion was caused by propane gas escaping from underground lines installed and maintained by appellee, and that appellee was negligent in respect thereto.

At trial, evidence was adduced to support appellants' theory, but appellee presented° evidence from which it could reasonably be concluded that the explosion was caused by marsh gas or methane, which was known to be present in the area.

Trial was to a jury, which returned a verdict for appellee. After denying appellants' motion for new trial, the court entered judgment for appellee, including an award of costs of $1,003.25, and an attorney's fee of $5,000.

The appeal brings up only the question of whether the court erred in denying the motion for new trial. Appellants contend (1) that the court erred in applying the wrong legal standard in determining whether claimed juror misconduct required a new trial, (2) that a new trial should have been granted because the verdict was the result of passion, and (3) that a new trial should have been granted, based on all the evidence.

On cross-appeal, Petrolane contends (1) that it was error to deny expert witness fees to appellee, (2) that the court abused its discretion in awarding only $5,000 in attorney's fees to appellee, and (3) that the court erroneously instructed the jury that appellee was subject to an increased standard of care.

I

Affidavits of three jurors were filed, claiming that a juror, Gary Vandenberg, stated in the jury deliberations that he knew Bob Whaley, a witness for Petrolane, to be a good mechanic and that if Whaley had done repairs on the Petrolane system they would have been done properly.

In *West v. State*, 409 P.2d 847, 852 (Alaska 1966), we established the standard for determining whether juror misconduct requires a new trial:

> "Whether the verdict should be set aside and a new trial ordered rests in the sound discretion of the trial judge, but generally the verdict should stand unless the evidence clearly establishes a serious violation of the juror's duty *and* deprives a party of a fair trial." (emphasis added).

In *West*, we observed that there is a general policy against allowing a juror to impeach the jury's verdict, but that exceptions to this general rule are recognized when the kind of misconduct claimed is "fraud, bribery, forcible coercion or any obstruction of justice." *Id.* at 852.

In the case at bar, the superior court concluded (1) that Vandenberg's conduct was not a *serious* violation of his duty, i. e., was not tantamount to "fraud, bribery, forcible coercion or any obstruction of justice," and (2) that Vandenberg's statements did not clearly deprive appellants of their right to a fair trial.

The parties argue from a number of cases.[1] We will not repeat that discussion here. The ultimate question is simply whether we believe the superior court erred in ruling as it did. We conclude that it did err.

The conduct at issue is, in our view, tantamount to an obstruction of justice. On voir dire Vandenberg either intentionally or inadvertently failed to disclose that he knew one of the witnesses, Bob Whaley. Whaley was defendant's employee, and testified as to the work performed by the defendant. Subsequently, during jury deliberations, Vandenberg argued to his fellow jurors that he knew Whaley, that he was competent, and that if Whaley did the job then it must have been done well. The

1. Appellants cite and discuss *Carr v. Irons*, 259 So.2d 240 (Ala.1972); *Irving v. Bullock*, 549 P.2d 1184 (Alaska 1976); *Poulin v. Zartman*, 542 P.2d 251 (Alaska 1975); *Martinez v. Bullock*, 535 P.2d 1200 (Alaska 1975); *Simms v. State*, 464 P.2d 527 (Alaska 1970); *Gafford v. State*, 440 P.2d 405 (Alaska 1968); *Watson v. State*, 413 P.2d 22 (Alaska 1966); *West v. State*, 409 P.2d 847 (Alaska 1966); *People v. Southern California Edison Co.*, 56 Cal.App.3d 593, 128 Cal.Rptr. 697 (1976); *Shipley v. Permanente Hospitals*, 127 Cal.App.2d 417, 274 P.2d 53 (1954); *Williams v. Bridges*, 140 Cal. App. 537, 35 P.2d 407 (1934); *Edelstein v. Roskin*, 356 So.2d 38 (Fla.App.1978); *Gills v. Angelis*, 312 So.2d 536 (Fla.App.1975); *Hodge v. Jacksonville Terminal Co.*, 234 So.2d 645 (Fla. 1970); *Pierce v. Altman*, 147 Ga.App. 22, 248 S.W.2d 34 (1978); *Heaver v. Ward*, 68 Ill. App.3d 236, 24 Ill.Dec. 930, 386 N.E.2d 134 (1979); *Geo. C. Christopher & Son, Inc. v. Kansas P & C Co.*, 215 Kan. 185, 523 P.2d 709 (1974); *Simmons v. State*, 222 A.2d 366 (Me. 1966); *Vincent v. Goodman*, 568 S.W.2d 907 (Tex.Civ.App.1978); *Akres v. Epperson*, 141 Tex. 189, 171 S.W.2d 483 (1943); *Isabelle v. Proctor Hospital*, 131 Vt. 1, 298 A.2d 818 (1972); *Arthur v. Washington Iron Works*, 22 Wash.App. 61, 587 P.2d 626 (1978); *Ryan v. Westgard*, 12 Wash.App. 500, 530 P.2d 687 (1975); *Halverson v. Anderson*, 82 Wash.2d 746, 513 P.2d 827 (1973); *State v. Gobin*, 73 Wash.2d 206, 437 P.2d 389 (1968); and *Gardner v. Malone*, 60 Wash.2d 836, 376 P.2d 651 (1962).

jury thereafter returned a verdict in defendant's favor.

We hold that this failure by a juror to acknowledge an acquaintance with a witness, and then to argue the probability of a fact to co-jurors based on that acquaintance, that is, based on evidence outside the record, constitutes an obstruction of justice. Vandenberg's conduct. was fundamentally unfair to the plaintiffs. Part of the right to an impartial jury is the right to know of juror biases favoring one party or the other. Had Vandenberg acknowledged his acquaintance with the witness, the plaintiffs would have been alerted, and could have either challenged Vandenberg or questioned him further to discover any actual bias.

Because we conclude that the conduct constituted a violation of the juror's duty, it is necessary to reach the second tier of the *West* test: were plaintiffs deprived of a fair trial? We conclude that the trial court erred in holding that they were not.

Three considerations provide guidelines for making this determination. First, if the party asserting prejudice had known the true facts, is it probable that it would have challenged the juror? *See Shipley v. Permanente Hospitals*, 127 Cal.App.2d 417, 274 P.2d 53, 57 (1954). Second, did the improper comment merely go toward a collateral matter, e. g., the general credibility of a witness, or did it go to the essence of a claim or defense? *See, e. g., Carson v. Brauer*, 234 Or. 333, 382 P.2d 79, 86 (1963); *State v. Gardner*, 230 Or. 569, 371 P.2d 558, 562 (1962). Third, viewed objectively,[2] was the probable effect of the comment prejudicial?[3]

Applying these factors to this case leads to the conclusion that plaintiffs were deprived of a fair trial. First, it is highly likely plaintiffs would have challenged Vandenberg if they were aware that the juror

knew Petrolane's employee who did the repair work. Second, Vandenberg's comment went to the heart of the defense of non-negligence. He did not merely comment that the witness was a truthful person; rather, he argued to his co-jurors that he knew that this witness did competent work and, therefore, Petrolane could not have been negligent. Finally, we can objectively conclude that Vandenberg's comments affected the jury. Vandenberg is a self-employed contractor who develops trailer lots. The claim was that the defendant negligently installed propane gas lines at a trailer court owned by plaintiffs. As others on the jury were laypersons, Vandenberg's statements, in conjunction with his business experience, must have influenced other jurors.

We conclude, therefore, that the trial court abused its discretion in not granting appellants' motion for a new trial. In light of this disposition we need not reach appellants' other assertions of error.

## II

Petrolane asserts that the trial court erred in giving the following instruction: "Gas is a dangerous commodity and one who undertakes to control it must use a high amount of care to prevent its leaking. Accordingly, a supplier of gas is under a duty to exercise a higher degree of vigilance and caution than another may use in the ordinary affairs of life and business. This is so because of propane's highly explosive and dangerous character and the possibility that it may escape its proper containers.

A gas company must make certain that its service pipes and fittings are not defective when installed upon the customer's premises, and it must maintain a system of inspection which will insure

---

**2.** The trial court was correct in its view that it cannot inquire into the actual, that is, subjective, impact of Vandenberg's statement upon particular jurors. *See No. Pac. Ry. v. Mely*, 219 F.2d 199, 202 (9th Cir.1954), cited in *Irving v. Bullock*, 549 P.2d 1184, 1188 n.10 (Alaska 1976).

**3.** In *Smith v. Covell*, 100 Cal.App.3d 947, 161 Cal.Rptr. 377, 380 (1980), the court held that when juror misconduct is shown, it is presumed prejudicial and thus the verdict is set aside unless the prevailing party establishes that the misconduct was harmless.

reasonable promptness in the detection of leaks which may occur from the deterioration of the material of the pipes or from any other cause which may be known to the Defendant. The failure to take such precautions as a reasonable gas company would take under the same or similar circumstances, given the required standard of care set out above, is negligence."[4]

Although we are reversing the judgment, we will deal with this issue because it may guide the superior court as to further proceedings after the case is remanded.

Petrolane argues that the instruction imposes a higher duty of care on it than upon other persons in general.[5] Fickes, on the other hand, argues that the instruction is proper in that it was adopted, in a modified form, from our decision in *Larman v. Kodiak Electric Association*, 514 P.2d 1275 (Alaska 1973). The instruction is erroneous as written and should not be given in a new trial.

In *Larman*, we approved a standard articulated by the California Supreme Court for defining negligence by a handler of a dangerous commodity. We approved the standard there[6] because it fleshed out the principle of reasonable care under the same or similar circumstances. Similarly here, it is proper for the trial court to inform the jury that one who installs gas lines must exercise a high degree of care.

Thus, it would have been preferable had the instruction merely pointed out that handling propane gas creates a dangerous circumstance and requires a degree of care

---

4. The trial court also gave the following instructions on negligence:

"Negligence as used in these instructions is the doing of an act which a reasonably prudent person would not do, or the failure to do something which a reasonably prudent person would do, influenced by those considerations which normally regulate the conduct of human affairs. It is the failure to use ordinary care in the management of one's property or person.

Ordinary care is that care which persons of ordinary prudence exercise in the management of their own affairs in order to avoid injury to themselves or others. The amount of caution required of a person in the exercise of ordinary care depends upon the danger which is apparent to him or should be apparent to an ordinarily prudent person in the particular situation and circumstances involved.

One test that is helpful in determining whether or not a person was negligent is to determine whether or not, if a person of ordinary prudence had been in the same situation and possessed of the same knowledge, he would have foreseen or anticipated an unreasonable risk of harm to someone as a result of his action or inaction. If such a result from certain conduct would be foreseeable by a person of ordinary prudence with like knowledge and in a like situation, and if the conduct could be avoided, then not to avoid it would be negligence.

Negligence is not an absolute term, but a relative one. By this it is meant that in deciding whether there was negligence in a given case, the conduct in question must be considered in the light of all the surrounding circumstances as shown by the evidence.

. . . . .

Because the amount of care exercised by a reasonably prudent person varies in proportion to the danger known to be involved in what is being done, it follows that the amount of caution required, in the use of ordinary care, will vary with the nature of what is being done, and all the surrounding circumstances shown by the evidence in the case. To put it another way, any increase in foreseeable danger requires increased care."

5. In its cross-appeal Petrolane takes exception only to the first paragraph of the instruction, and thus we have no occasion to review the propriety of the second paragraph.

6. In *Larman* we adopted the following standard of care owed by one maintaining electrical wires:

"On the subject of negligence the standard of care is, that one maintaining wires carrying electricity is required to exercise the care that a person of ordinary prudence would exercise under the circumstances. Among the circumstances are the well known dangerous character of electricity and the inherent risk of injury to persons or property if it escapes. Hence, the care used must be commensurate with and proportionate to that danger.

Specific application of that standard requires that wires carrying electricity must be carefully and properly insulated by those maintaining them at all places where there is a reasonable probability of injury to persons or property therefrom."

*Larman*, 514 P.2d at 1279.

commensurate with that danger. *See Wilson v. City of Kotzebue*, 627 P.2d 623 (Alaska 1981); *Auriemme v. Bridgeport Gas Co.*, 21 Conn.Sup. 66, 144 A.2d 701, 702 (1958); *Lewis v. Vermont Gas Corp.*, 121 Vt. 168, 151 A.2d 297, 306 (1959); Prosser on Torts § 34, at 180 (4th ed.1971).

We believe a proper wording of the first paragraph of the instruction, under *Larman*, is as follows:

> "Gas is a dangerous commodity and one who undertakes to control it must exercise the care that a person of ordinary prudence would exercise under the circumstances, that is, exercise a degree of care commensurate to its danger. Accordingly, a supplier of gas is under a duty to exercise a higher degree of vigilance and caution than one might use in the ordinary and less dangerous affairs of life and business. This is so because of propane's highly explosive and dangerous character and the possibility that it may escape its containers."

REVERSED and REMANDED.