Jose G. MANRIQUE, Appellant,

v.

STATE of Alaska, Appellee.

No. A–9461.

Court of Appeals of Alaska.

Feb. 22, 2008.

---

1. Op. at 1186–87.

2. AS 47.10.030(b).

Paul E. Malin, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Blair M. Christensen, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

STEWART, Judge.

A jury convicted Jose G. Manrique of first-degree sexual assault and first-degree burglary.[1] Manrique claims that the superior court erroneously denied his motion for a new trial; Manrique contended that he did not receive a fair trial because two jurors were biased. We reject Manrique's claim as to one juror, but conclude that Manrique is entitled to a hearing regarding the other.

Manrique also argues that the superior court improperly failed to refer his case to the three-judge sentencing panel. We address this issue and reject it. The record supports the superior court's finding that Manrique did not prove that a referral to the three-judge panel was warranted.

### Facts and proceedings

On September 18, 2004, after a day of hiking, A.C. and some of her friends gathered at A.C.'s house in Dillingham for dinner. Manrique arrived later with one of A.C.'s friends. Manrique and A.C. knew one another from earlier hiking and fishing excursions. After too much drinking, A.C. became sick, and her girlfriends cleaned her up and put her to bed. A.C.'s girlfriends stayed and slept in the living room adjoining A.C.'s bedroom.

Manrique and two other men left A.C.'s house at 11:30 p.m. to go to Manrique's residence where they watched a movie. Manrique returned to A.C.'s house at 3:00 a.m. and let himself in. He entered A.C.'s bedroom. A.C. awoke to discover Manrique pulling her pants off. A.C. and Manrique conversed with one another. Manrique kissed her. She told him that it was "not okay" and that he should leave. Manrique performed cunnilingus on A.C. A.C. tried to get Manrique off her, but he held her down and penetrated her vagina with his penis. Manrique left A.C.'s house around 4:30 or 5:00 a.m.

The jury convicted Manrique of both charges. At the time of sentencing, Manrique was 42 years old and he had no criminal history. Superior Court Judge Donald D. Hopwood imposed a composite term of 9 and 1/2 years with 1 and 1/2 years suspended. Manrique appeals.

### Discussion

#### Manrique's motion for a new trial

Shortly after the jury convicted Manrique, he moved for a new trial, arguing that two jurors—Derrick Darrough and Connie Timmerman—"fail[ed] to provide relevant information in response to counsel and the court's questioning during voir dire on April 25, 2005." Manrique claimed that Darrough withheld his social contact with Alisha Downs, a nurse who worked closely with A.C., and he claimed that Timmerman failed to disclose her prior employment with SAFE, a Dillingham shelter and advocacy program for domestic violence and sexual assault victims. (SAFE provided support to A.C. after she reported the sexual assault, and a SAFE advocate was assigned to A.C.) Manrique supported his motion with notarized statements from several individuals.

Manrique argued that his Sixth Amendment right to an impartial jury was violated by Darrough's failure to disclose the connection between himself and Downs and to disclose that he had been inside A.C.'s residence. Manrique also argued that right was violated by Timmerman's failure to disclose

1. AS 11.41.410(a)(1) & AS 11.46.300(a)(1), respectively.

her prior employment and experience with SAFE. Manrique claimed that he would have preempted the jurors if they had provided that information, and contended that Darrough may have been excused for cause. Manrique requested an evidentiary hearing.

The State argues, as it did below, that Judge Hopwood was precluded by Rule 606(b) of the Alaska Rules of Evidence from considering any of the notarized letters and affidavits attached to Manrique's motion for a new trial.

■ But that assertion is wrong. Evidence Rule 606(b) restricts inquiries into the validity of a jury's verdict but it does not bar inquiries into whether a juror lied or purposely withheld information during voir dire.[2] Therefore, Judge Hopwood did not err in considering the affidavits.

Judge Hopwood denied Manrique's motion for a new trial. Judge Hopwood assumed "that all of the factual assertions in the motion and supporting affidavits, statements, and attachments are admissible ... and ... true." Judge Hopwood pointed out that, during voir dire, Darrough answered that he knew A.C., and the judge faulted Manrique's counsel for not inquiring further into that relationship. With respect to the claim that Darrough had been in A.C.'s residence, Judge Hopwood pointed out that "[t]he layout of the house and grounds was not disputed significantly at trial. Any knowledge the juror had of the property was inconsequential." The judge also determined that a comment by Darrough that he desired to be on the jury did not suggest misconduct: "Rather, it connotes an interest in the case and in deliberating with the rest of the jurors."

Regarding Timmerman's prior employment with SAFE, Judge Hopwood stated that: "If past education, training or employ-

ment as a sexual assault advocate were important, counsel could have asked about it. But the voir dire of the juror was quite brief and neither attorney questioned the juror about these topics."

Judge Hopwood concluded that both jurors "responded truthfully and adequately to all voir dire questions," and that the jurors did not violate their duty as jurors and would not have been excused for cause had they revealed the pertinent information.

■ When a court considers an allegation of juror misconduct, a court follows a two-part inquiry: (1) whether the evidence establishes a serious violation of the juror's duty, and if so, (2) whether the violation deprived the complaining party of a fair trial.[3] A serious violation of a juror's duty may be demonstrated by "fraud, bribery, forcible coercion, or any obstruction of justice." [4] In *Fickes v. Petrolane–Alaska Gas Service,*[5] the Alaska Supreme Court held that it was "tantamount to an obstruction of justice" that a juror, during voir dire, negligently or intentionally failed to disclose that he knew an important witness in the case, and then during deliberations, assured his fellow jurors that they could rely on his knowledge of that witness's reliability and competence.[6] And in *Swain v. State,*[7] this Court held that it was an obstruction of justice for a juror not to reveal her friendship with the victim or the fact that she had spoken with the victim about the crime.[8] More recently, in *Soundara v. State,*[9] we held that it was error for the trial judge to rule that a juror's late-disclosed information did not provide a basis for a challenge for cause without first making a finding on the issue of whether, during the jury selection process, the juror understood the relevance of the information and "consciously withheld the information in the face

---

2. *See* Stephen A. Saltzburg, Michael M. Martin, & Daniel J. Capra, 2 Federal Rules of Evidence Manual (9th ed.2006), § 606.02[3] at 606–5; *Hard v. Burlington Northern R.R.,* 812 F.2d 482, 485 (9th Cir.1987).

3. *See West v. State,* 409 P.2d 847, 852 (Alaska 1966); *Fickes v. Petrolane–Alaska Gas Service,* 628 P.2d 908, 910 (Alaska 1981).

4. *West,* 409 P.2d at 852.

5. 628 P.2d 908 (Alaska 1981).

6. *Fickes,* 628 P.2d at 910.

7. 817 P.2d 927 (Alaska App.1991).

8. *Id.* at 935.

9. 107 P.3d 290 (Alaska App.2005).

of questions and admonitions that reasonably called for this information[.]"[10]

Turning to the jurors at issue in this case, Darrough answered that "I know Officer Westlake and [A.C.]." Also, when Judge Hopwood asked the potential jurors who has "heard or read anything about this case from any source other than what I've told you here?", Darrough raised his hand. Manrique's attorney asked Darrough if knowing A.C. would affect his ability to acquit Manrique of sexual assault if the State did not prove Manrique's guilt beyond a reasonable doubt. Darrough answered: "No, I don't believe so. I don't know her that well." The attorney had no additional questions.

Judge Hopwood found that Manrique's trial attorney failed to inquire further after Darrough answered that he knew A.C.

In *Soundara,* we ruled that:

> An attorney must ask sufficient questions, and sufficiently precise questions, to elicit all desired information from prospective jurors. If the attorney fails to do this, the attorney will not be heard to complain later that newly revealed information, had it been disclosed earlier, would have prompted the attorney to exercise one or more additional peremptory challenges.[11]

■ Based on this record, Judge Hopwood could properly conclude that Manrique had not shown that Darrough had consciously withheld information in the face of questioning that reasonably called for the juror to respond. Darrough did respond that he knew A.C., and Manrique's attorney inquired briefly as described above, but he did not put additional questions to the juror.

■ Judge Hopwood also denied Manrique's request for a hearing regarding juror Timmerman. Judge Hopwood accepted as true the notarized statements Manrique provided indicating that Timmerman had worked for SAFE. Based on these statements, Manrique asserted that Timmerman had a "previous working relationship with people who would be testifying against defendant."

Judge Hopwood noted that the questioning of the juror was brief and neither party asked the juror about her past employment (with SAFE) or her education. Judge Hopwood ruled that if the juror's education, training or employment as a sexual assault advocate was important, it was the attorney's obligation to ask those questions directly.

However, the jurors were asked whether anyone had special knowledge about the medical field. Timmerman did not raise her hand, but other jurors responded and discussed their special medical knowledge. Two jurors disclosed (on two different days of jury selection) that they worked for SAFE. Another juror disclosed that she had counseled people who were victims of sexual assault. These jurors were preempted.

The jurors knew that one count charged in Manrique's case was sexual assault, and they were asked whether they knew any victim of a sexual assault. Although the notarized statements provided by Manrique indicated that Timmerman worked for SAFE, and sexual assault victims are one of the groups served by the organization, she did not raise her hand.

Judge Hopwood faulted counsel for failing to inquire specifically into Timmerman's prior employment or to question her about "past education, training or employment as a sexual assault advocate." He ruled that Manrique failed to demonstrate misconduct and that Timmerman would not have been removed for cause.

■ But, the test for juror misconduct does not require a showing that a juror would have been removed for cause.[12] In *Soundara,* this Court held that it was error for a judge to determine that a juror would not have successfully been challenged for cause without first determining if the juror understood the relevance of the information during the jury selection process and consciously withheld that information in the face of questions and admonitions that reasonably called for it. We ruled that if the trial judge finds that these two things are satisfied, then

---

**10.** *Id.* at 298.

**11.** *Id.* at 296.

**12.** *See Fickes,* 628 P.2d at 910–11.

the test in *Swain* should be applied: (1) Would the defendant have challenged the juror if the juror had not concealed this information? (2) Was the improperly withheld information directly relevant to the decision of the defendant's case, or was it instead merely collateral to the issues being litigated? and (3) Is there a reasonable possibility that the juror's withheld information affected the juror's vote? [13]

For two days the prosecutor and Manrique's attorney questioned prospective jurors about their beliefs with respect to sexual assault, victim and perpetrator stereotypes, and how a sexual assault victim should respond. If juror Timmerman was aware of this earlier questioning, it is reasonable to conclude that the questioning should have alerted Timmerman to the importance of revealing her prior employment with SAFE and any specialized knowledge she had as a result of that employment. But when asked if there was "anything about this case, what you've heard so far, that makes you think, maybe I shouldn't be here?", Timmerman replied, "No."

Therefore, we will remand the case to the superior court for an evidentiary hearing to determine whether there was a serious violation of Timmerman's duty as a juror. To succeed at this hearing, Manrique must show that Timmerman understood the potential relevance of the information that she had worked with SAFE, and if so, that she consciously withheld that information in the face of questions and admonitions reasonably calling for its disclosure. If Manrique establishes these points, the superior court must then answer the three-part test from *Swain* discussed above. The superior court shall report its findings to this court and we will resume our consideration of the case.

*Manrique's claim regarding referral to the three-judge sentencing panel*

Manrique was a first-felony offender and faced an 8–year presumptive term for his first-degree sexual assault conviction.[14] There were no statutory aggravating or mitigating factors alleged.

Manrique asked Judge Hopwood to refer his case to the three-judge sentencing panel.[15] He contended that: (1) the presumptive term of 8 years would be manifestly unjust or plainly unfair under the facts of his case; and (2) manifest injustice would result from failure to consider a non-statutory factor— his exceptional prospects for rehabilitation, based on his lack of a prior record and his good reputation in the community.

We consider the totality of the circumstances in determining whether the sentencing court erred in not referring the case to a three-judge panel.[16] It was Manrique's burden to prove by clear and convincing evidence his exceptional potential for rehabilitation.

> When a defendant proposes the non-statutory mitigator of extraordinary potential for rehabilitation, it is the defendant's burden to prove by clear and convincing evidence "that [the defendant] can be adequately treated in the community and need not be incarcerated for the full presumptive term in order to prevent future criminal activity." Such a prediction of successful treatment and non-recidivism should only be made when the sentencing court is reasonably satisfied both that it knows why a particular crime was committed and that the conditions leading to the criminal act will not recur—either because the factors that led the defendant to commit the crime are readily correctable or because the defendant's criminal conduct resulted from unusual environmental stresses unlikely to recur.[17]

Manrique argues that "Judge Hopwood relied upon the mere fact of [Manrique's] conviction for a 'very serious' crime to override

---

13. *Soundara*, 107 P.3d at 297–98 (citing *Swain*, 817 P.2d at 935).

14. *See* former AS 12.55.125(i)(1)(A).

15. *See* AS 12.55.175.

16. *Lloyd v. State*, 672 P.2d 152, 154, 156 (Alaska App.1983).

17. *Beltz v. State*, 980 P.2d 474, 481 (Alaska App.1999)(citing *Lepley v. State*, 807 P.2d 1095, 1100 (Alaska App.1991)).

his otherwise exceptional prospects for rehabilitation." And he points to *Kirby v. State*[18] for the general rule that the seriousness of a crime, standing alone, does not render rehabilitation potential irrelevant. But Judge Hopwood found that Manrique had not proven exceptional potential for rehabilitation. He found that Manrique had "very good . . . but not exceptional" potential for rehabilitation.

Judge Hopwood did not dispute Manrique's "good citizenship, his excellent neighborly spirit, his excellent parenting." But he concluded that, in determining whether Manrique demonstrated exceptional prospects for rehabilitation, he would not consider Manrique's arguments suggesting that A.C.'s consent was ambiguous because "[t]he jury found and decided that it had been proven beyond a reasonable doubt that the defendant committed the offense of sexual assault in the first degree." Judge Hopwood essentially reasoned that Manrique's refusal to accept responsibility for the sexual assault weighed against finding that Manrique's potential for rehabilitation was exceptional: "Because . . . of the defendant's position about what happened and what his prospects are and how he intends to proceed, I can't find that there are exceptional prospects for rehabilitation." When a defendant does not acknowledge responsibility for a crime, the defendant has not advanced an explanation for the crime or provided the sentencing judge with convincing evidence that the conditions leading to the conviction would not reoccur.[19]

We have reviewed the sentencing record. The record supports Judge Hopwood's ruling that Manrique had not proven the non-statutory mitigating factor of exceptional prospects for rehabilitation.

 Manrique also contends that imposition of the unadjusted 8–year presumptive term would be manifestly unjust and that Judge Hopwood improperly failed to conclude otherwise. Manrique relies on his contention that A.C.'s lack of consent was "ambivalent," that Manrique's offense was isolated, and that Manrique's family was impacted by the conviction.

 In order to find manifest injustice, a sentencing judge must find that there are specific circumstances that make a defendant or his conduct significantly different than a typical offender or a typical offense.[20]

The record supports Judge Hopwood's ruling that Manrique had not proven that he was significantly different from a typical offender or that his conduct was significantly different from a typical offense. Manrique was convicted of first-degree sexual assault and first-degree burglary. The jury's verdicts established that Manrique entered A.C.'s house (at night) with the intent to sexually assault A.C., and that he followed through with that intent. He performed cunnilingus and penetrated A.C. vaginally with his penis, with reckless disregard for her lack of consent.

*Conclusion*

We AFFIRM Judge Hopwood's ruling rejecting Manrique's request to refer the case to the three-judge sentencing panel. We AFFIRM Judge Hopwood's ruling rejecting Manrique's motion for a new trial based on his claim regarding juror Darrough. We remand the case for a hearing on juror Timmerman. The superior court shall transmit its findings on this issue to this court within 90 days. After the superior court transmits its findings, we will resume our consideration of that remaining issue.

---

**18.** 748 P.2d 757, 766 (Alaska App.1987).

**19.** *See Beltz*, 980 P.2d at 481.

**20.** *Id.* at 480.