Derek D. SAWYER, Appellant,

v.

STATE of Alaska, Appellee.

No. A–10160.

Court of Appeals of Alaska.

Jan. 7, 2011.

Christine S. Schleuss, Law Office of Christine Schleuss, Anchorage, for the Appellant.

Tamara E. de Lucia, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Daniel S. Sullivan, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

***OPINION***

BOLGER, Judge.

Derek D. Sawyer was convicted of murder for killing his wife, Gretchen Sawyer. Sawyer's defense at trial was that Gretchen either committed suicide, or that their twenty-nine-month-old son, Trace, shot her accidentally.

Sawyer raises numerous claims of error. We conclude that Superior Court Judge John Suddock did not abuse his discretion when he declined to order the State to disclose investigations of other young children firing guns or when he declined to impose sanctions on the State for their failure to preserve paper bags that the investigating trooper used to package evidence taken from the crime scene. We conclude that evidence that Sawyer was a good parent was not admissible to show that he was not a murderer. We conclude that even if Sawyer did not waive his right to be present when the judge questioned and dismissed an errant juror, Sawyer does not establish that his absence caused any recognizable prejudice. And we conclude that another trial juror did not commit a serious violation of his duties when he neglected to mention that his former girlfriend had been killed in a drunk driving incident.

***Background***

Gretchen and Derek Sawyer married in 1994 and moved from Arkansas to Glennallen, Alaska, after the birth of their son, Trace. Gretchen returned to Arkansas for a visit in February of 1996, and during that visit she reunited with her former high school boyfriend, Cody Bruce. Gretchen became pregnant, and Sawyer suspected that Bruce was the father. The couple's relationship deteriorated as Sawyer continued to question the baby's paternity while Gretchen maintained that it was his baby.

On July 13, 1997, Gretchen was shot once in the face with a Colt .357 Magnum revolver as she lay in her bed around midnight. Sawyer called 911 after the shooting, and Alaska State Trooper Mark Ridling responded to the scene.

Sawyer reported that he and Gretchen had gone to bed around 10:00 that evening, but that he got up to shower around midnight. Sawyer told Trooper Ridling that he ran from the bathroom after he heard a gunshot and that his son, Trace, was sitting on the floor of the bedroom next to a revolver. Sawyer told the officer that the revolver belonged to his father, and that Sawyer had placed the loaded gun on the kitchen table next to a stack of rental videos, all of which he intended to return the next day. Trooper Ridling seized some evidence from the bedroom, including the gun and the bloody pillows from the bed.

The day after Gretchen's death, members of the community contacted Trooper Ridling to ask if they could clean the Sawyers' house, and Ridling agreed, believing that he could

not secure the crime scene without a warrant.

Gretchen's killing went uncharged until Sawyer was indicted in 2006 on one count of first-degree murder.[1] At trial, Sawyer contended that Gretchen must have committed suicide, or that twenty-nine-month-old Trace accidentally shot and killed his mother. The State presented evidence that Trace was not physically able to pull the trigger on the gun due to the size and strength of his hands. Sawyer was convicted after trial and he now appeals.

### Discussion

#### Sawyer's Motion to Compel

■ Sawyer filed a motion to compel, asking the judge to order the State to produce the results of Alaska State Troopers investigations into incidents reported in the Anchorage Daily News where young children fired weapons, resulting in injury or death. The motion referred to three specific investigations "as well as any other instances of young children firing guns known to the State." The State opposed the motion to compel, arguing that the case files Sawyer requested were irrelevant. The State argued that the issue in Sawyer's case was not whether *any* child was capable of firing any gun, but whether Trace was capable of firing the handgun used in this case.

Judge John Suddock denied the motion in a written order finding that Sawyer's discovery request was unduly burdensome to the police authorities and would constitute "an extraordinary waste of time and resources." Judge Suddock noted that the request was "hopelessly overbroad," and remarked that the defense had available to it "far superior avenues to pursue its point [that young children are capable of firing guns]," including expert testimony by occupational therapists or national databases maintained by safety organizations "that would dwarf the tiny sampling available in police files in Alaska."

On appeal, Sawyer argues that the trial court committed reversible error when it refused to compel the State to disclose Alaska State Troopers investigative reports from the three reported incidents. Sawyer contends that the trial court was required to issue a subpoena to compel this production because the reports contained relevant evidence favorable to the defense.[2]

■■ This court will uphold a trial court's decision to deny a motion to compel discovery except when the court has plainly abused its discretion.[3] An abuse of discretion has occurred when the reasons for the exercise of the trial judge's discretion are clearly untenable or unreasonable.[4]

■ Alaska Criminal Rule 16(b)(1)(A)(i) requires the prosecution to disclose "[t]he names and addresses of persons known by the government to have knowledge of relevant facts and their written or recorded statements or summaries of statements." Rule 16(b)(7) allows the court "in its discretion" to require disclosure of other relevant information "[u]pon a reasonable request showing materiality to the preparation of the defense." Information listed in Rule 16(b)(1)(A)(i) must be disclosed automatically, but information covered by Rule 16(b)(7) need be produced on request only after a showing of materiality.[5]

■ Both of these subsections require the discoverable information to be relevant; this requirement will justify nondisclosure of information that is "reasonably not thought to

1. AS 11.41.100(a)(1)(A).

2. *See Braham v. State*, 571 P.2d 631, 643 (Alaska 1977) (holding that information from ongoing investigations must be disclosed if relevant and if disclosure will not "harm enforcement or protection efforts").

3. *Gunnerud v. State*, 611 P.2d 69, 72–73 (Alaska 1980).

4. *Lewis v. State*, 469 P.2d 689, 695 (Alaska 1970).

5. *Carman v. State*, 658 P.2d 131, 140 (Alaska App.1983).

be germane to the case." [6]  In order to satisfy this relevance threshold, evidence of unrelated prior incidents must have taken place under substantially similar circumstances.[7]

There were significant dissimilarities between this case and those reported in the news media.  In one case from Kasilof, a five-year-old child was killed with a rifle, but the report did not indicate which of three young siblings, all seven or younger, was holding the rifle when it went off.  In another case from Nightmute, a child of unreported age shot a twelve-year-old boy with an unidentified weapon.  In the third case from Fort Wainwright, a four-year-old shot himself with a handgun he retrieved from a high shelf.  None of the cases involved a handgun fired by a child as young as Trace.  There were also no parties or witnesses linking these investigations to Sawyer's case.  We conclude that the judge did not abuse his discretion in refusing to order this disclosure.

*Sawyer's Motion to Dismiss the Indictment*

■  Following the second day of testimony, Sawyer filed a motion to dismiss the indictment based upon the State's failure to preserve the bags used to transport a blue pillow from the Sawyer residence to the Glennallen trooper station.  Sawyer requested either dismissal of the indictment, or the suppression of all evidence relating to the seized bedding and pillows, or a spoliation instruction.[8]

The State's theory at trial was that a tear in the fabric and gunshot residue on the blue pillow showed that it was in contact with the gun when it discharged.  The defense argued that the gun was laying on the pillow when it was fired and that the blood was transferred to the back of the pillow when it was packaged and contaminated by other bloody objects.  Sawyer argued that Trooper Ridling's failure to preserve the original packaging of the pillows meant that the jury could not determine the position of the pillow during the shooting.  The State responded by pointing out that the blood-soaked condition of the blue pillow was evident from photographs taken at the scene and therefore it would be speculative for Sawyer to argue that the original packing would allow him "to show . . . whether there was blood on the back of the pillow."  The State also pointed out that Trooper Ridling testified that he recalled that there was blood on both sides of the blue pillow when he seized it.

Judge Suddock denied the motion, finding that Trooper Ridling's failure to preserve the bags was in good faith, and that the defense had not shown any prejudice.[9]  Judge Suddock noted that the defense would be free to argue that the generalized deficiencies in the State's management of the evidence created a reasonable doubt as to whether the pillows cross-contaminated one another, and stated "therein lies the punishment to the State for [any] defects in evidence collection."[10]

On appeal, Sawyer withdraws his claim that the trial court should have dismissed his indictment but pursues his claims that the judge should have suppressed the evidence or given a spoliation instruction.  The appli-

---

6.  *Howe v. State*, 589 P.2d 421, 424 (Alaska 1979).

7.  *See Walden v. State Dep't of Transp.*, 27 P.3d 297, 303 (Alaska 2001) (evidence of prior or subsequent accidents is admissible in product liability litigation so long as the incident took place under substantially similar circumstances).

8.  *See Thorne v. Dep't of Pub. Safety*, 774 P.2d 1326, 1331–32 & n. 12 (Alaska 1989) (finding that when the State fails to preserve evidence, the jury should be directed to presume that the evidence would have been favorable to the defendant).

9.  *See March v. State*, 859 P.2d 714, 716 (Alaska App.1993) ("While officers have a duty to preserve potentially exculpatory evidence actually gathered during a criminal investigation, the due process clause has never required officers to undertake a state-of-the-art investigation of all reported crimes.").

10.  *Thorne*, 774 P.2d at 1331–32 & n. 12.

cation of sanctions for the failure to preserve evidence depends on the degree of the prosecution's culpability, the importance of the lost evidence, and the prejudice to the defense.[11]

Judge Suddock's findings were not clearly erroneous and his ruling was reasonable. Trooper Ridling's testimony suggested that the bags were likely destroyed inadvertently. The evidentiary value of the packaging was not apparent. And Trooper Ridling's observations suggested that the defense had not been prejudiced by the loss of this evidence. Under these circumstances, no sanctions were required.

### Sawyer's Request that His Children Be Allowed to Testify

■ The Sawyers had two children, Trace (Sawyer's biological child) and Jodicee (the child that Sawyer suspected to be Bruce's). Sawyer sought to call his children to testify as to the strength of their relationship with Sawyer and to the fact that Sawyer did not love Trace more than Jodicee. Sawyer also sought to present the children's testimony that Sawyer never spoke negatively about Gretchen, and that he hung a photo of Gretchen in the children's bedroom.

Judge Suddock denied Sawyer's request, finding that the evidence was not relevant, and was unduly prejudicial. Judge Suddock found that the testimony from the children would advance the inference that they would be orphaned if Sawyer was convicted.

■ Sawyer argues that his ability to present a defense was infringed when Judge Suddock denied this request.[12] Sawyer contends that the children's testimony was crucial to counter the State's claim that Sawyer killed his wife because of his resentment that Jodicee was not his biological child. We review a trial court's decision to exclude evidence under Alaska Evidence Rule 403 for an abuse of discretion.[13]

Sawyer's attorney made the following argument when he offered this evidence:

> Our argument is, a killer doesn't keep constant reminders of the person he killed, on a daily basis in his house. And that if Derek Sawyer was a murderer, as they claim, who had no blood interest in Jodicee at all, that it's fundamentally inconsistent with that claim, to have loved her and raised her [as he did] his own son.

In other words, Sawyer wanted to use the children's testimony about his good parenting conduct to show that he was not a murderer. And, in the context of this case, he obviously intended to use this inference that he was not a murderer to establish that he did not murder Gretchen.

■ But evidence of a person's character is not admissible to show that the person acted in conformity therewith on a particular occasion.[14] And even when a trait of the defendant's character is relevant, the defense may not rely on specific instances of good conduct.[15] So Sawyer was not entitled to use the inference that he was not a murderer to

---

11. *Putnam v. State*, 629 P.2d 35, 43 (Alaska 1980), *abrogated on other grounds by Stephan v. State*, 711 P.2d 1156, 1159 (Alaska 1985) ("[W]here it appears that the evidence was lost or destroyed in good faith, the imposition of sanctions will depend upon the degree to which the defendant has been prejudiced."); *State v. Contreras*, 674 P.2d 792, 821 (Alaska App.1983), *rev'd on other grounds*, 718 P.2d 129, 130 (Alaska 1986) ("[W]here no specific rule or court decision requires the prosecution to preserve the evidence in question . . . the defendant bears the burden of proving that, if preserved, the evidence would have been exculpatory.").

12. *See Keith v. State*, 612 P.2d 977, 984 (Alaska 1980) (admitting character evidence over the State's objection that it was cumulative where

the evidence "was vital to the defendant's version of the events").

13. *Weitz v. State*, 794 P.2d 952, 955 (Alaska App. 1990).

14. *See* Alaska Evid. R. 404(a); *Linehan v. State*, 224 P.3d 126, 146–47 (Alaska App.2010) (holding that evidence that defendant admired a murderous movie character was not admissible to show that she committed murder).

15. *See* Alaska Evid. R. 405; *Allen v. State*, 945 P.2d 1233, 1239–40 (Alaska App.1997) (holding that evidence of defendant's prior acts of violence was not admissible to prove his character for violence).

show that he did not murder Gretchen. And he was not entitled to rely on specific instances of good parenting to show that he was not a murderer.

It was not an abuse of discretion for the judge to conclude that any marginal probative value of the children's testimony was outweighed by the danger of unfair prejudice—that the jury would use the evidence improperly to conclude that Sawyer was not a killer or that the jury would acquit to avoid separating the children from their father.

### *Sawyer's Right–to–Be–Present Juror–Dismissal Claim*

After the prosecution had rested and the defense had already examined several witnesses, the prosecutor reported that a juror, Daniel Becker, had been discussing the case with friends and had commented on the case in violation of the court's order. Judge Suddock examined Becker outside the presence of the jury, but in the presence of defense counsel and the prosecutor. Sawyer's attorney stated that Sawyer waived his right to be present.

During the examination, Becker admitted to discussing the case with two non-juror friends; he admitted commenting generally about the evidence but denied commenting on the strength of the State's case. Juror Becker also told the court that he was scheduled to begin a training course related to his work and, therefore, would not be available for jury service when the jury was expected to be deliberating.

Judge Suddock explained that he had clearly conveyed to the jury that they were not to form or express opinions about the case, and that they were warned not to divulge that they were jurors in the case. Judge Suddock found that Becker had will-

fully violated these instructions. Judge Suddock announced that he would excuse Becker, considering this violation, along with the fact that Becker desired to attend a training during the time the jury was expected to be deliberating. The judge noted that "I think we are more likely to have a fair and impartial jury if we do so."

Even though Sawyer's lawyer raised no objection at the time, and in fact encouraged Judge Suddock to proceed in Sawyer's absence, Sawyer argues that his constitutional right to be present at all stages of his trial was violated when Judge Suddock questioned Becker in his absence. "If a defendant has a constitutional right to be present at a proceeding, the defendant must personally waive his right to be present or expressly consent to allow the proceeding to occur outside his presence."[16] When a defendant's right to be present at a proceeding is violated, we evaluate whether the error was harmless beyond a reasonable doubt.[17]

In many circumstances, the defendant has the absolute right to be present when the court questions a juror,[18] and the record contains no indication that Sawyer personally waived his right to be present. We do not know what discussion occurred between Sawyer and his attorney. But this type of error does not require reversal if there is a legitimate reason to excuse the juror, if there is nothing in the record that suggests that the defendant's presence would have affected the judge's decision, and if there is no reason to believe that an alternate juror made a decision that was different than the juror who was excused.[19]

We assume for purposes of this opinion that it was error to question Becker outside Sawyer's presence. But the court's decision to excuse Becker was harmless because the

16. *Pease v. State,* 54 P.3d 316, 324–25 (Alaska App.2002).

17. *Collins v. State,* 182 P.3d 1159, 1163–64 (Alaska App.2008).

18. *See Pease,* 54 P.3d at 325 (explaining that "it is error for a judge to receive the verdict outside the presence of the defendant (even if counsel is present)").

19. *Collins,* 182 P.3d at 1163; *Coney v. State,* 699 P.2d 899, 904 (Alaska App.1985).

juror's violation of his oath and his work responsibilities were legitimate reasons to excuse him. Defense counsel was present, and there is no reason to believe that Sawyer's personal presence would have made a difference in the judge's decision. There is likewise nothing in the record to suggest that the seating of the alternate juror made any difference in the outcome of the trial.

### Sawyer's Motion for a New Trial Based upon Juror Misconduct

█ Prior to sentencing Sawyer filed a motion for a new trial alleging that another juror, Martin Finnesand, failed to disclose information that the defense would have used to challenge him. Specifically, defense counsel asked: "Has anyone, or their relatives or friends, ever been the victim of or witness to a serious violent crime?" Finnesand did not report that his former girlfriend, and the mother of his child, had been killed in an incident for which her boyfriend was convicted of vehicular homicide.

At the evidentiary hearing on Sawyer's motion, Finnesand testified that he and his girlfriend had a daughter together in 1981 and then separated in 1985. In 1990, Finnesand's former girlfriend was killed when she was thrown from a moving vehicle, possibly during an episode of domestic violence. Her boyfriend, Bill Linnell, pled no contest to criminally negligent homicide and was sentenced to serve one year in jail.

Finnesand testified that the incident "simply did not come to [his] mind" during the voir dire questioning about violent crimes and that he always thought of his former girlfriend's death as being accidental. He testified that he believed that Linnell had been charged with "drunken driving, or negligence of some kind." Finnesand testified that the parties did not ask any questions

during voir dire that reminded him of his former girlfriend's death and he further stated that he did not especially want to sit on Sawyer's jury.

Judge Suddock found that Finnesand did not consciously withhold information and that any information relating to Finnesand's former girlfriend was unrelated to Sawyer's trial. Accordingly, the judge denied Sawyer's motion for a new trial.

█ We review a trial court's denial of a motion for a new trial for an abuse of discretion.[20] When a party alleges juror misconduct, "the verdict should stand unless the evidence clearly establishes a serious violation of the juror's duty *and* deprives a party of a fair trial."[21] A new trial should be granted if the jury selection process suggests that a juror consciously withheld information.[22]

The trial judge applied the appropriate test when he concluded that Finnesand did not consciously fail to disclose material information on voir dire. The question about whether Finnesand's friends or relatives had been the victim of a violent crime did not clearly apply to the information about Finnesand's former girlfriend because Finnesand did not view the motor vehicle accident as a violent crime. There was likewise no evidence that Finnesand's participation deprived Sawyer of a fair trial. The judge's decision to deny the motion for a new trial was not an abuse of discretion.

### Cumulative Error

█ Sawyer argues that the cumulative impact of the foregoing errors deprived him of a fair trial. But "[c]umulative error requires reversal only when the impact of errors at trial is so prejudicial that the defendant was deprived of a fair trial, even if each

**20.** *Cheely v. State,* 861 P.2d 1168, 1178 (Alaska App.1993) (citing *Swain v. State,* 817 P.2d 927, 930 (Alaska App.1991)).

**21.** *Fickes v. Petrolane–Alaska Gas Serv., Inc.,* 628 P.2d 908, 910 (Alaska 1981) (quoting *West v. State,* 409 P.2d 847, 852 (Alaska 1966)); *see also*

*Manrique v. State,* 177 P.3d 1188, 1191 (Alaska App.2008).

**22.** *Soundara v. State,* 107 P.3d 290, 296 (Alaska App.2005).

individual error was harmless." [23]   We conclude that Sawyer has not established any error except the judge's decision to question and exclude a juror when Sawyer was not present, and that error did not cause Sawyer any recognizable prejudice.

### Conclusion

We therefore AFFIRM the superior court's judgment.

---

**23.**  *Roussel v. State,* 115 P.3d 581, 585 (Alaska     App.2005).